CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 18 2007

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL POFF, <br>     Plaintiff, | ) <br> )   Civil Action No. 7:06cv00429 <br> ) |
| v. | ) <br> )   By:  Michael F. Urbanski |
| JO ANNE B. BARNHART, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>     Defendant. | )        United States Magistrate Judge <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

Plaintiff Michael Poff ("Poff") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying Poff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("Act"). By Order entered October 13, 2006, this case was referred to the undersigned Magistrate Judge for report and recommendation. Following the filing of the administrative record and briefing, oral argument was held on February 21, 2007. As such, the case is now ripe for decision.

The undersigned finds that the record does not contain substantial evidence to support the Commissioner's determination that Poff retains the residual functional capacity to do a limited range of work at the sedentary level. Based on evidence from all of his treating physicians, Poff has established that he suffers from a disability preventing all substantial gainful employment as of June 22, 2004 and is entitled to DIB benefits. Accordingly, it is recommended that the ALJ's decision be reversed and the Commissioner be directed to take appropriate action to calculate and award benefits.

# I.

Poff was born on March 2, 1966, graduated from high school and completed less than two semesters of college. (Administrative Record [hereinafter R.] at 18, 52, 133) Poff's previous work includes that of a chemical coating operator and quality control operator. (R. 18, 53-54, 140-41) Poff filed an application for DIB on or about July 12, 2004, alleging that he became disabled on June 22, 2004, due to neck pain from a cervical fusion in 1983 and low back pain which developed after a motor vehicle accident in 2005. (R. 18, 55-59, 160, 165) Poff's claims were denied at both the initial and reconsideration levels of administrative review, and a hearing was held before an administrative law judge ("ALJ") on November 10, 2005. (R. 34, 45-102) At the conclusion of the hearing, a decision was reserved and the record was held open for claimant to submit documentation of the orthopedic evaluation conducted by Dr. Whitehill at the University of Virginia ("UVA") Medical Center on November 2, 2005. (R. 34) The only records submitted were progress notes from Poff's treating psychologist. (R. 34, 16) On February 23, 2006, the ALJ issued a decision denying Poff's claims for DIB, finding that Poff retains the residual functional capacity ("RFC") to perform a limited range of sedentary work.[1] (R. 44) After that decision was released, Poff submitted two additional pages of medical records from the UVA Medical Center. (R. 16) Those records did not include any notes or records from Dr. Whitehill's November 2, 2005 evaluation. (R. 16) Thereafter, Poff contacted the office of the

---

[1]Sedentary work requires exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

ALJ and advised the ALJ that additional medical documentation from Dr. Whitehill was forthcoming. (R. 16-17) The ALJ received a one page office note dated November 1, 2005 from Dr. Whitehill, considered the new evidence, and issued a new opinion on March 29, 2006. (R. 16-17) Once again, the ALJ concluded that Poff can do a limited range of work at the sedentary level, but he is limited to jobs which do not require him to work with his arms above his head and those jobs which do not involve exposure to vibration or hazards. (R. 27) Despite such limitations, as a vocation expert ("VE") had identified several jobs in significant number in the national economy which Poff could perform, the ALJ denied Poff's claim. (R. 27-28)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on June 23, 2006, when the Appeals Council denied Poff's request for review. (R. 6-8) Poff then filed this action challenging the Commissioner's decision.

## II.

Poff argues that the ALJ erred in failing to give controlling weight to the opinions of his treating physicians and, thus, in determining that he retains the RFC to due a limited range of sedentary work. (Pl. Summ. J. at 15-19) Accordingly, he requests that the decision of the Commissioner be reversed or, in the alternative, remanded for reconsideration. (Id. at 19-20)

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson

3

v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

### III.

Poff argues the ALJ failed to give controlling weight to the opinions of his treating physicians, Dr. Ball, Dr. Alouf, Dr. Whitehill, and a psychologist, Jonathan Heil, that Poff is disabled from all forms of substantial gainful employment. Specifically, Poff points to the July 2, 2004 letter from Dr. Alouf which instructs Poff to cease all work activity, (R. 217), and a letter directed to the Disability Determination Services which states that Poff is unable to sustain any duties for more than fifteen minutes at a time and needs multiple breaks during the day. (R. 204, 212, 274) Poff also argues that Dr. Ball's December 3, 2004 RFC conclusion that Poff cannot lift any weight; can stand, walk, and/or sit for no more than one or two hours per day; and needs the opportunity to change position every ten minutes, and his determination that Poff ought not work should have been given controlling weight. (R. 269-70) In further support of his claim of total disability, Poff points to Dr. Whitehill's November 1, 2005 office note, (R. 340), and Licensed Clinical Psychologist Heil's September 2005 mental assessment. (R. 296-97)

The ALJ determined that although Poff suffered from an impairment which could reasonably be expected to produce some degree of pain, the lack of any objective medical evidence and findings in the record to support pain of such severity, persistency, and intensity rendered his complaints not entirely credible. (R. 23-24) In reaching this finding, the ALJ considered the fact that despite Poff's complaints of disabling pain he made minimal efforts to seek treatment. Specifically, the ALJ noted that Poff did not report any current use of physical therapy, a TENS unit, a dorsal simulator, a morphine pump, acupuncture, massage therapy,

4

braces/splints, special creams or ointments, herbal remedies, chiropractic adjustments, and/or hot/cold packs nor did he seek treatment from a pain specialist. (R. 24) In concluding that Poff can do some sedentary work, the ALJ specifically noted the RFC determination was less restrictive than Dr. Alouf and Dr. Ball's assessments because there were no medical records or treatment notes to support their proposed limitations. (R. 24-26) Further, the ALJ disregarded psychologist Heil's opinion as to Poff's allegedly disabling depression finding that Poff's depression was not severe as it was not expected to last more than twelve months if Poff was compliant with treatment. (R. 22)

In determining how much weight should be afforded to a physician's opinion, the ALJ should consider whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. In light of such considerations, the opinions of treating physicians are generally afforded controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

The undersigned finds that the ALJ's cursory statement that Poff's treating physicians' opinions were not entitled to controlling weight because they were inconsistent with their treatment notes is, at best, based on a superficial review of those notes. Poff's primary care physicians repeatedly documented that Poff is unable to work on a full-time basis because he

5

cannot maintain one position for very long and needs frequent opportunities to recline and/or walk at will during the day. Likewise, Poff's treating psychologist indicated his ability to focus was severely impaired by pain and depression; thus, eliminating his ability to consistently function in the workplace. These opinions are supported by the record as a whole and, therefore, should not have been discounted nor should the opinions of a non-examining state agency physician been favored in their stead.

## A.

Poff was involved in a motor vehicle accident in 1982, in which he was severely injured. Poff wore a halo for more than a year before his C1 and C2 vertebra were fused in 1983. (R. 54-57, 299) Since then he alleges he has suffered from increasingly severe neck pain which makes it difficult for him to turn his head and/or sit for extended periods of time and often requires him to lie down, with a baseball bat under his neck to relieve the pressure, several times a day. (R. 58-63) Additionally, Poff testified that his discomfort is so severe he does little more than lie in bed, watch television, and play with his six year old son for about twenty minutes at a time. (R. 87)

On September 9, 2004, in a letter to the Disability Determination Services, Dr. Alouf represented that Poff suffers from chronic neck pain, headaches, and severe stiffness which has not been alleviated through pain management and/or physical therapy. (R. 203, 205) Further, he noted that Poff's pain decreased once he stopped working, and although he concluded that Poff was "not totally disabled from doing activities," he believed Poff would need the opportunity to take multiple breaks during the workday. (R. 203-06)

On December 3, 2004, Dr. Ball completed a medical assessment of Poff's ability to do work related activities. (R. 269-70) Dr. Ball found that Poff is unable to lift any weight, can only stand or walk for one to two hours in an eight hour work day, and can only sit for one to two

hours before needing the opportunity to change position. (R. 269) He also noted that Poff's ability to reach, handle, and push and/or pull objects is restricted by his degenerative disc disease; he can do no postural activities; and he cannot work in environments where he will be exposed to heights, moving machinery, high temperatures, chemicals, noise, fumes, and/or vibration. (R. 270) Dr. Ball made identical conclusions in October 2005. (R. 294-95) Then, in November 2005, Dr. Ball completed a third RFC determination. (R. 324-28) In that assessment Dr. Ball concluded that Poff is unable to sit and/or stand for more than twenty minutes at a time; he cannot tolerate any work stress; he needs the opportunity to change position and walk around for about five minutes every fifteen minutes; he can rarely lift weight of up to ten pounds; he can never hold his head in a static position and can only rarely look down, up, and/or occasionally turn his head; he has significant limitations in the use of his right hand; and Poff only has "bad days" in terms of pain. (R. 324-28)

In contrast to Dr. Alouf and Dr. Ball's assessments, on August 28, 2004, a state agency physician, Dr. Johnson, completed a Residual Functional Capacity Assessment and determined that Poff retains the ability to lift twenty pounds occasionally and ten pounds frequently, to stand and/or walk about two hours in an eight hour day, and to sit about six hours in an eight hour day; and that he has unlimited ability to push or pull, but can only occasionally climb stairs, ropes, or ladders. (R. 195-97) Dr. Johnson based his findings on Poff's medical records and noted that Poff's complaints of pain were only partially credible in light of the fact that Poff's daily activities had only been minimally impacted by his pain, he was still able to drive and care for his children, his treatment to date was routine and conservative, he has not sought treatment from a specialist, and he has not pursued physical therapy to relieve his pain. (R. 200) A subsequent

7

state agency assessment conducted on November 8, 2004, reached the same conclusions. (R. 261-66)

It is noteworthy that a sixth assessment completed in October 2005 by Thomas Stites, MPT, found that Poff is able to due sedentary work duties, but cannot tolerate an eight hour work day as he is only able to manage one or two minutes of continuous work activity before needing to rest. (R. 357-389) During the testing Stites noted that Poff needed additional pain medication and needed the opportunity to lie down twice during the testing to reduce pain, and he exhibited non-verbal signs of discomfort including rubbing his neck and moving his head. (R. 357)

## B.

Poff's demonstrated functional abilities are consistent with Dr. Alouf and Dr. Ball's assessments as well as with Stites' assessment. Poff testified at the evidentiary hearing and reported in his disability questionnaire that his neck pain is so severe he does little more than lie in bed and watch television and spend a little time each day playing with his children. And, although he reported that he helped care for his children and cooked some simple meals, he also reported that his wife provides most of the care for his children, regularly cleans the home and does yard work, and prepares most meals. (R. 149, 151) Likewise, he reported that although he likes to read magazines, build model cars, and play video games, he is unable to do these activities for very long before feeling pain and pressure in his neck and dizziness so severe he must stop. (R. 152)

A thorough review of Dr. Alouf and Dr. Ball's treatment notes indicate that Poff repeatedly complained of chronic neck pain and headaches, he reported his symptoms were only somewhat controlled by medication and massage, and his neck pain was relieved when he stopped working because he was no longer forced to maintain a static head and/or neck position

8

during the day. Dr. Alouf's office notes from 2002 through 2004 note that Poff suffered from worsening chronic neck pain and headaches, secondary to the neck fusion. (R. 201-02, 207-08, 213-16, 218-22, 242-47, 257-59 ) Further, although Poff reported that the conservative treatment he was provided, namely pain medication and injections in his neck and shoulders, helped control his discomfort, the records reveal that the relief provided was not long lived, required increasingly frequent doses, and a stronger prescription pain reliever. (R. 224-27, 237-38, 257-59) Likewise, Dr. Ball determined that Poff suffered from persistent neck pain, headaches, and depression attributable to chronic pain from the cervical fusion and that he should not work. (R. 274-77) Dr. Ball's treatment notes reveal that Poff complained of worsening neck pain and depression, and he asked for increasingly frequent injections and stronger medication to relieve his pain. (R. 278-86, 310-20) Consistent with these complaints, the record reveals that Dr. Ball found Poff's neck was increasingly stiff and he prescribed increasingly strong medication to control Poff's pain. (R. 278-86, 310-20)

Offering further support to the conclusion that Poff suffered severe and debilitating neck pain are the treatment notes of Poff's physical therapist, an emergency room physician, and Dr. Whitehill, an orthopedist. On June 22, 2005, Kimberly Evans, MPT, completed a physical therapy initial evaluation. (R. 290-91, 302-03) She noted that Poff described his pain as a six-out-of-ten on most days and a ten-out-of-ten when aggravated, he was moderately tender to palpation of the cervical spine, he had a decreased range of motion in his cervical spine, and that his chronic neck pain was exacerbated by the motor vehicle accident in May 2005. Evans concluded an exercise program, soft tissue mobilization, postural training, stretching exercises, and strengthening exercises would likely cause Poff's pain to be reduced to a zero or one within

9

four weeks; however, she noted that Poff reported that previous attempts of chiropractic manipulation to relieve his pain were unsuccessful. (R. 291, 303)

Similarly, following an emergency room visit for neck pain on August 29, 2005, Dr. Lustig found that Poff had a neck disorder with symptoms referable to the C1-C2 fusion, specifically numbness and neck pain, Poff's range of motion in his neck was limited, he was tender on palpation of the neck and cervical spine, and he could not hold his neck in one position or direction for very long. (R. 287-89) Dr. Lustig prescribed Lortab, a narcotic pain reliever, and advised Poff to consult a neurosurgeon if his discomfort continued. (R. 288)

Likewise, Dr. Whitehill's office notes suggest that Poff suffers from disabling neck pain. Poff saw Dr. Whitehill on November 1, 2005, and Dr. Whitehill noted that the bone graft and the protruding wires from the fixation were likely causing irritation of the musculature and great occipital nerve resulting in the "prolonged problem with his cervical spine and continued neck pain." Further, although he noted that clipping the ends off the wires may relieve Poff's discomfort, he stated there was no guarantee this would alleviate the pain. (R. 340)

The objective medical records suggest that the bone graft and neck fusion are responsible for the pain Poff alleges. Poff underwent numerous CT scans, x-rays, and an MRI of his cervical spine over the years. And, although these results offer little evidence as to the severity of Poff's pain, they do establish the source of his discomfort. Specifically, they reveal that although the C1-C2 fusion remains intact and aligned, there are post-operative changes to the area, there is some deformity of the dens, there are notable degenerative changes in his cervical spine, and the wires from the fusion are protruding into his musculature. (R. 211, 239, 260, 268, 273, 292-93, 306, 338)

10

## C.

Dr. Ball referred Poff for mental health treatment in the fall of 2005 after Poff complained he was becoming increasingly depressed due to his ongoing neck pain and headaches and the resultant limitations. (R. 318) Poff was examined by John Heil, a Licensed Clinical Psychologist, in September 2005. (R. 299-301, 333-335) Heil noted that Poff suffered from major depression and a pain disorder, he was functioning at a level of 55/100, and a time frame for improving his mental condition was impossible to estimate due to the severity of his chronic pain. (R. 300, 334) Further, Heil noted that Poff reported his pain increased with activity and workplace head and neck positioning, but his pain was decreased somewhat with medication and vigorous, self-administered, penetrating massage. (R. 299-301, 333-35)

Approximately one month later, Heil completed an assessment of Poff's mental difficulties and his ability to work. (R. 296-97) Heil concluded that Poff had unlimited ability to follow work rules; good ability to relate to co-workers and supervisors, to follow simple rules, and to maintain his personal appearance; and fair ability to deal with the public, use judgment with the public, to function independently, to behave in an emotionally stable manner, and to relate predictably in social situations; but that he had poor ability in dealing with work stress, maintaining attention and concentration, and demonstrating reliability. (R. 296-97) Heil attributed Poff's psychological problems to his deteriorating spinal condition. (R. 296)

Heil saw Poff four additional times, twice in group sessions and twice in individual sessions, between October 19, 2005 and November 16, 2005. (R. 329-32) In both group sessions, Heil noted Poff participated well and interacted appropriately with group members; however, he further noted that Poff had a severe pain flare up in November and his functional ability was regressing. (R. 330, 332) Similarly, in both individual sessions Heil noted that Poff

11

was functioning at a fair level and that his functional ability continued to regress because his pain management remained unsuccessful. (R. 329, 331) There are no further treatment records from Heil.

Poff began seeing Susan Riggs, a Licensed Professional Counselor, in April 2006. She noted that Poff was depressed and irritable secondary to chronic pain, but that his thought process and perception were normal. (R. 344-48) Riggs also noted that Poff had a GAF score of 59.[2] (R. 347) Riggs treatment notes from April and May reveal that Poff remained severely depressed and reported that he was taking a lot of pain medication to control his discomfort, he was having trouble sleeping due to pain, and he was having difficulty dealing with and interacting with his family and strangers because of his pain. Further, he indicated that because of his unrelenting pain and depression he was spending less time with his children and attending their activities and he was no longer pursuing any of his own hobbies or interests. (R. 341-43) In April 2006 Riggs completed an assessment of Poff's ability to work based on his psychological difficulties. (R. 355-56) In that assessment Riggs noted that Poff could perform satisfactorily for four to six hours on a consistent work schedule, but would have trouble working for eight hours at a time because of his "moderate to severe depression as well as his inability to manage his pain." (R. 355-56)

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders Fourth Edition 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id. A GAF of 61-70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

12

## D.

There is significant evidence in the record to support Poff's complaints of disabling pain and depression. The objective medical record demonstrates that there is a physical source for Poff's pain – the deformity at the neck fusion and the protrusion of the fusion wires into Poff's musculature. Further, the treatment notes from Poff's physicians and mental health providers reveal Poff suffers chronic worsening neck pain and headaches which have caused severe limitations to his ability to function both physically and mentally and that he has been prescribed increasingly stronger pain medication and at higher doses, yet, his pain remains unalleviated. All of Poff's treating physicians opined that Poff was physically and mentally unable to do meet job and workplace requirements on a consistent basis because of the chronic and severe nature of his pain. The only evidence to contradict these determinations are the opinions of the non-examining state agency physicians. As such, the undersigned concludes that the record does not contain sufficient "persuasive contrary evidence" to allow the ALJ to disregard the opinions of Poff's treating physicians. Mastro, 270 F.3d at 178.

In discounting Poff's pain, the ALJ cited Poff's failure to take pain medication the ALJ deemed indicative of severe pain and/or to engage in physical therapy. Although the dosage and type of pain medication may be significant in determining the credibility of a claimant's allegations of pain, it is not the only consideration. Rather, the ALJ must consider the record as a whole and other manifestations of a claimant's pain. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating that although the ALJ is not required to accept a claimant's subjective allegation that he is disabled by pain, he must throughly examine the medical record to determine whether the claimant has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged). As noted above, the record clearly demonstrates that Poff's pain

13

is attributable to his neck fusion and that that pain has dramatically limited his functional abilities, prevented him from interacting normally with his family and the public, and has also caused severe depression further limiting his social abilities.

Likewise, the ALJ's conclusion that Poff should have completed a period of physical therapy is flawed. The Commissioner bore the burden of producing evidence that Poff's chronic pain is remediable by treatment and that he, without good cause, refused to follow prescribed, not merely recommended, treatment. See Preston v. Heckler, 769 F.2 988, 990 (4th Cir.1985). Therefore, even if the undersigned assumes that Poff's treating physician's prescribed physical therapy and Poff refused to continue with physical therapy, the ALJ was obliged to develop a record which established by substantial evidence that Poff's condition would have reasonably remedied his chronic pain such that he could maintain substantial gainful employment. Id. There is nothing in the record which suggests that had Poff completed physical therapy he would have been able to return to full-time employment nor that he unreasonably refused treatment.

Accordingly, the undersigned concludes that the record does not contain substantial evidence to support the ALJ's decision to disregard the opinions of Poff's treating physicians and to determine that Poff retained the RFC to do a range of sedentary work.

## IV.

The record as a whole reveals that Poff's pain had an objective medical cause and severely impacted his ability to function both physically and mentally. Further, his treating physicians and psychologists all concluded that his pain and resultant depression precluded him from functioning in the workplace. Accordingly, the ALJ's decision to discredit those opinions and medical records in favor of the non-examining state agency physician's opinion and his own determination of appropriate medical treatment was incorrect. Therefore, it is the

14

recommendation of the undersigned that defendant's motion for summary judgment be denied and plaintiff's motion for summary judgment be granted and that the Commissioner's decision be reversed and remanded with the direction to award benefits.

The Clerk is directed to immediately transmit the record in this case to the Hon. James C. Turk, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 18th day of April, 2007.

Michael F. Urbanski
United States Magistrate Judge